**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| DOMINIC LEE TANGEN,<br>Plaintiff,<br>vs.<br>BRYCE BILHARZ and MICHELLE BECK,<br>Defendants. | No. 25-CV-2039-CJW-MAR<br><br>**ORDER** |

---

Defendants' motion for summary judgment is before the Court. (Doc. 14). Plaintiff filed a resistance, (Doc. 17), and defendants filed a reply, (Doc. 18). For the following reasons, defendants' motion for summary judgment is **granted**.

## *I. UNDISPUTED FACTS*[1]

Plaintiff is a resident of Black Hawk County, Iowa and a citizen of Iowa. (Doc. 6, at 1). During the relevant time, defendant Bryce Bilharz ("Bilharz") was a trooper with the Iowa State Patrol. (Doc. 17-3, at 1). Bilharz is a certified Drug Recognition Expert ("DRE"). (*Id.*, at 7) Also during the relevant time, defendant Michelle Beck ("Beck") was a trooper with the Iowa State Patrol. (Docs. 17-3, at 10; Doc. 14-3, at 25). Beck is also a DRE. (*Id.*, at 7).

On July 12, 2023, Bilharz was on duty and patrolling on Highway 63 in a fully marked squad car when he noticed the front window of plaintiff's vehicle appeared to be visibly darker than allowed by Iowa's window tint law. (Doc. 17-3, at 1). Bilharz activated his emergency lights to initiate a traffic stop of plaintiff. (*Id.*, at 2). The parties

---

[1] The following facts are undisputed unless otherwise noted. The Court will discuss additional facts as they become relevant to the Court's analysis.

disagree as to whether plaintiff was initially responsive to the traffic stop. (*Id.*). Defendants state plaintiff was not initially responsive, that other vehicles ahead of plaintiff yielded before plaintiff, and that plaintiff nearly struck a yielding vehicle before merging back onto the highway and eventually pulling over on to the shoulder. (*Id.*). Plaintiff states that he immediately began to slow down when he saw Bilharz's emergency lights and attempted to pull over. (Doc. 18-1, at 2–3). Plaintiff further states he could not immediately pull over because the vehicle ahead of him was decelerating more quickly, and that he did not come close to hitting the other car. (*Id.*, at 3).

After plaintiff pulled over, Bilharz approached plaintiff's vehicle on the passenger side and asked plaintiff to roll down the back window for officer safety. (Doc. 17-3, at 2). Bilharz tested plaintiff's windows with his state-issued tint meter and determined that plaintiff's front two side windows and windshield did not conform to Iowa law. (*Id.*, at 3). Bilharz requested plaintiff's driver's license, vehicle registration, and proof of insurance. (*Id.*). While standing at plaintiff's passenger side window, Bilharz noticed plaintiff had something in his mouth that appeared to make his mouth turn red. (*Id.*). Plaintiff testified that he took acetaminophen immediately before his encounter with Bilharz and that, because he did not have water available, he held the acetaminophen in his mouth which tinted his mouth red. (Doc. 18-1, at 4). Plaintiff informed Bilharz of the acetaminophen. (*Id.*).

While plaintiff was searching for his insurance card, he asked Bilharz if he had given Bilharz his driver's license, which Bilharz was already holding because plaintiff had handed it to Bilharz a moment before. (Doc. 17-3, at 3). Plaintiff did not give Bilharz his insurance card, though the parties dispute whether plaintiff was able to locate the card. (*Id.*). Bilharz asked plaintiff to sit in his patrol car and began filling out paperwork. (*Id.*, at 4). While sitting in Bilharz's patrol car, plaintiff was sniffling, fidgeting, and digging at his nail beds. (*Id.*). Defendants also state that plaintiff had

body tremors and was making rambling statements; plaintiff denies any tremors or rambling. (*Id.*).

Bilharz asked plaintiff if he may be using drugs, and asked plaintiff to perform standardized field sobriety tests. (*Id.*). Bilharz first administered the horizontal gaze nystagmus test, which was negative for signs of impairment. (*Id.*). Before administering the next test, the walk and turn test, Bilharz asked plaintiff if he had any lower extremity problems, and plaintiff denied having any such problems. (*Id.*). Bilharz then administered the walk and turn test and observed four standardized clues of impairment: lack of balance, raised arms, stopping, and missed heel-to-toe. (*Id.*, at 4–5). After the walk and turn test, plaintiff informed Bilharz that he suffers from sciatica. (Doc. 18-1, at 1, 4–5). Next, Bilharz administered the one leg stand test and observed clues of impairment, including plaintiff swaying while balancing and putting his foot down. (17-3, at 5).

Prior to the preliminary breath test ("PBT"), Bilharz and plaintiff engaged in some small talk. (*Id.*). The parties disagree as to whether plaintiff exhibited signs of relaxed inhibition during the small talk. (*Id.*). The PBT was negative for alcohol. (*Id.*). Based on his observations and because the PBT was negative for alcohol, Bilharz believed plaintiff was impaired by something other than alcohol and performed additional field sobriety testing. (*Id.*, at 6). Bilharz observed tremors in plaintiff's hands during the modified Romberg test and plaintiff failed to follow instructions and touch the tip of his nose during the finger-to-nose test. (*Id.*).

After completing the field sobriety testing, Bilharz informed plaintiff he was being detained for further testing and transported him to Bremer County Law Enforcement Center ("Bremer"). (*Id.*). At Bremer, plaintiff was read his *Miranda* rights,[2] his right

[2] Referring to *Miranda v. Arizona*, 384 U.S. 436 (1966).

to phone calls, and the implied consent advisory. (*Id.*, at 7). Bilharz then performed a twelve-step drug influence evaluation. (*Id.*) As part of the evaluation, plaintiff again provided a breath sample which showed no alcohol in plaintiff's system. (*Id.*). Bilharz also asked general questions of plaintiff and made general observations. (*Id.*). At some point, Beck arrived to assist with the evaluation. (*Id.*). During the evaluation, plaintiff's pulse rate and blood pressure were elevated and his eye reaction to darkness and light was outside the norm. (*Id.*, at 8). Plaintiff also had a sore in his left nostril and, under UV lighting, his mouth was fluorescent pink. (*Id.*, at 9).

After the evaluation, defendants conferred regarding their observations and formulated the opinion that plaintiff was under the influence of a central nervous system stimulant and was unable to operate a motor vehicle safely. (*Id.*). Plaintiff provided defendants with a urine sample, as requested, and Bilharz placed plaintiff under arrest for operating while under the influence ("OWI"), for improper window tinting, and for failure to provide proof of financial responsibility. (*Id.*). The toxicology report on plaintiff's urine sample resulted in no finding of any controlled substance tested for, and the OWI and failure to provide proof of financial responsibility charges were dismissed. (*Id.*). Plaintiff pled guilty to the window tint violation. (*Id.*).

Plaintiff filed an amended complaint bringing one claim against defendants under Title 42, United States Code, Section 1983 based on a violation of the Fourth Amendment of the United States Constitution. (Doc. 6). Defendants now move for summary judgment on plaintiff's claim. (Doc. 14).

## *II. APPLICABLE LAW*

### *A. Summary Judgment Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely

disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" such that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The nonmovant plaintiff may not then simply point to allegations made in its complaint, but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085

(8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine dispute of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam); *Matsushita*, 475 U.S. at 587–88; *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

### *B. Section 1983 Standard*

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983, however, provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for

violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (Section 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred.'" (citation omitted)). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### *C. Qualified Immunity Standard*

When a motion for summary judgment rests on a claim of qualified immunity, courts must examine two prongs: (1) whether the facts established by the record make out a violation of a constitutional right, and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion as to which of the two prongs to apply first. *Id.* at 236. In assessing qualified immunity at the summary judgment stage, a court determines the material facts under the standard in Federal Rule of Civil Procedure 56, but "[o]nce the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff bears the burden of showing the law was clearly established. *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018).

For the law to be clearly established, "existing law must have placed the constitutionality of the [defendant]'s conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal citations and quotation marks

omitted). Further, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* (internal quotation marks and citations omitted). A right is clearly established by controlling authority, or, absent that, a "robust consensus of cases of persuasive authority," which puts an officer on notice that their conduct is unlawful. *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

## *III. DISCUSSION*

Plaintiff asserts under Section 1983 that defendants violated his Fourth Amendment right to be free from unreasonable seizures by extending his traffic stop without reasonable suspicion and arresting him for OWI without probable cause. (Doc. 6, at 8–10). Defendants move for summary judgment, arguing they are entitled to qualified immunity. The Court will address each defendant in turn.

### *A. Bilharz*

Defendants argue Bilharz is entitled to qualified immunity because he had reasonable suspicion to extend plaintiff's traffic stop into an investigatory stop for OWI, and probable cause to detain and arrest plaintiff for OWI. (Doc. 14-1, at 9–17). Defendants further argue that Bilharz is qualifiedly immune because he did not violate a clearly established law. (*Id.*, at 17). The Court will first determine whether the facts established by the record make out a violation of a constitutional right.

"An investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions were unrelated to the traffic offense that served as the basis of the stop." *United States v. Gomez Serena*, 368 F.3d 1037, 1041 (8th Cir. 2004). "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Carpenter*, 462 F.3d

981, 986 (8th Cir. 2006). Whether an officer had reasonable suspicion is based upon the totality of the circumstances. *United States v. Morgan*, 729 F.3d 1086, 1089 (8th Cir. 2013). Courts consider "what the officer reasonably knew at the time, rather than assessing the existence of reasonable suspicion with the vision of hindsight." *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020) (cleaned up). Plaintiff does not dispute that Bilharz had a valid reason for the traffic stop of plaintiff, specifically plaintiff's dark window tint. (Doc. 17-1, at 4); *see United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (holding that any traffic violation provides probable cause for a traffic stop). Rather, plaintiff focuses his challenge to the extension of the traffic stop to investigate for OWI. (*Id.*, at 4–5).

Here, the Court finds Bilharz had reasonable suspicion to extend the traffic stop to investigate whether plaintiff was intoxicated. First, plaintiff's difficulty in pulling over supports reasonable suspicion that he was impaired. *See United States v. Walker*, 555 F.3d 716, 719-20 (8th Cir. 2009) (holding that the defendant's erratic driving supported the police officer's suspicion that criminal activity was occurring); *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (holding that because defendant's erratic driving gave the officer reasonable suspicion that defendant was impaired, the initial stop was justified). Bilharz testified that, when pulling plaintiff over, plaintiff did not initially respond to Bilharz's patrol lights and that other vehicles yielded while plaintiff continued driving. (Doc. 17-3, at 2). Bilharz also testified that plaintiff almost struck another vehicle that was already yielding, though plaintiff states he had begun to slow down to pull over but could not safely pull over. (*Id.*). Whether plaintiff actually pulled over as soon as he could, as he claims, does not matter. The officer observed plaintiff not immediately responding to the patrol lights, which gives rise to concerns about whether plaintiff was engaged in criminal conduct. The officer was not in plaintiff's position to see that plaintiff could not pull over sooner, as plaintiff claims.

Second, Bilharz noticed that plaintiff had something in his mouth that plaintiff was not swallowing, and appeared to make plaintiff's mouth red. (Doc. 17-3, at 3). Additionally, while searching for his insurance card, plaintiff asked Bilharz if he had given Bilharz his driver's license, despite handing it to him only moments before, and Bilharz asked plaintiff why he was so nervous. (*Id.*).

True, there could be an innocent explanation for plaintiff's red mouth, as he claimed. But an officer need not eliminate every possibility before finding reasonable suspicion to extend a traffic stop. Federal courts, including the United States Supreme Court, have long held that an investigative stop is permitted even if "the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see also United States v. Arvizu*, 534 U.S. 266, 277 (2002) (instructing that reasonable suspicion may exist even if "each of the[ ] factors alone is susceptible of innocent explanation."); *United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."); *United States v. Sanchez*, 955 F.3d 669, 676 (8th Cir. 2020) (finding that although there could be innocent explanations for various individual factors, they can still support a finding of reasonable suspicion); *United States v. Reddick*, 910 F.3d 358, 361 (8th Cir. 2018) ("Law enforcement officers are entitled to evaluate the totality of the circumstances in deciding whether reasonable suspicion is present, and they may possess reasonable suspicion even when innocent explanations can be put forward for each individual circumstance."); *United States v. Cotton*, 782 F.3d 392, 395–96 (8th Cir. 2015) (holding that conduct that is susceptible to an innocent explanation can form the basis of reasonable suspicion); *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) ("When considered together, however, otherwise innocent facts can give rise to a reasonable suspicion, especially when viewed through the perspective of an experienced law enforcement

officer."). Thus, even if there were, theoretically, an innocent explanation for the color of plaintiff's mouth and his behavior regarding his license, the officer was justified in his suspicions sufficient to further detain plaintiff to investigate whether criminal conduct was afoot.

Finally, extreme nervousness can contribute to a finding of reasonable suspicion. *See United States v. Bloomfield*, 40 F.3d 910, 918–19 (8th Cir. 1994) ("Although it is customary for people to be 'somewhat nervous' when [an officer] pulls them over, it is unusual for people to 'fidget' as [defendant] did when the stop is a 'normal routine' traffic stop."); *United States v. Weaver*, 966 F.2d 391, 396 (8th Cir. 1992) (finding that the defendant's "nervousness, as manifested by his unsteady, rapid speech, his tremulous hands, and his swaying body, struck the officers as exceeding that exhibited by" someone not involved in criminal activity). Here, while Bilharz was filling out paperwork for plaintiff's unlawful window tint, plaintiff was sniffling, fidgeting, and digging at his nail beds, and Bilharz asked plaintiff if he may be using drugs. (17-3, at 4). Bilharz also testified that plaintiff appeared to have body tremors and was making rambling statements. (*Id.*). Based on these observations, Bilharz decided to extend the stop to perform standardized field sobriety tests. Again, perhaps there were innocent explanations for plaintiff's behavior, as he alleges, but that does not matter.

Under the totality of the circumstances, including plaintiff's difficulty pulling over, an unknown item in plaintiff's mouth, plaintiff's behavior regarding his license, and plaintiff's nervousness, Bilharz had reasonable suspicion that plaintiff was operating his vehicle while intoxicated and therefore to extend the traffic stop into an investigative stop.

Plaintiff argues that defendants cannot establish Bilharz had reasonable suspicion because plaintiff has presented material facts that establish he was not under the influence. (Doc. 17-1, at 4). Whether plaintiff was in fact under the influence, however, does not negate the multiple signs of impairment observed by Bilharz which created a reasonable

suspicion of impairment. *See Slater*, 979 F.3d, at 629 (stating reasonable suspicion is not assessed "with the vision of hindsight").

Following the field sobriety test, the Court finds that Bilharz had reasonable probable cause to detain plaintiff and bring him to Bremer for a drug influence evaluation. "Probable cause exists where the facts and circumstances within . . . the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (cleaned up).

During the field sobriety test, Bilharz observed multiple clues of impairment. Before administering the walk and turn test, Bilharz asked plaintiff if he had any lower extremity problems, and plaintiff denied having any such problems. (Doc. 17-3, at 4). During the walk and turn test, Bilharz observed four standardized clues of impairment: lack of balance, raised arms, stopping, and missed heel-to-toe. (*Id.*, at 5). Plaintiff then informed Bilharz that he had sciatica and experiences numbness in his legs. (18-1, at 5). During the one leg stand test, Bilharz observed that plaintiff swayed while balancing and put his foot down. (Doc. 17-3, at 5). When plaintiff's PBT result was negative for alcohol, Bilharz conducted additional field sobriety testing because Bilahrz's observations indicated some form of intoxication. (*Id.*, at 6). Bilharz observed tremors in plaintiff's hands during the modified Romberg test, and plaintiff failed to follow instructions and failed to touch the tip of his finger to the tip of his nose during the finger-to-nose test. (*Id.*).

Under the facts and circumstances known to Bilharz following the field sobriety test, including plaintiff's prior difficulty in pulling over, behavior regarding his license, nervousness, and multiple signs of intoxication during the field sobriety test, Bilharz had reasonably trustworthy information to warrant his belief that plaintiff had been driving

under the influence, and therefore probable cause to detain plaintiff for a drug influence evaluation at Bremer.

Finally, Bilharz had probable cause to arrest plaintiff for OWI following the drug influence evaluation at Bremer. During the drug influence evaluation, conducted by Bilharz and assisted by Beck, plaintiff's pulse and blood pressure were elevated, and his eye reaction to darkness and light was outside the norm, indicating the presence of certain categories of drugs. (Doc. 17-3, at 8). Plaintiff was also observed to have a sore in his left nostril on his septum and his mouth was fluorescent pink under UV lighting. (*Id.*, at 9). These observations, together with Bilharz's prior observations, led defendants to conclude that plaintiff was under the influence of central nervous system stimulant. (*Id.*).

Taken together, Bilharz had reasonably trustworthy information to warrant his belief that plaintiff had been driving under the influence of a stimulant, and thus to arrest plaintiff for OWI. That plaintiff informed Bilharz that he suffered from sciatica and had taken acetaminophen does not negate the signs of impairment observed by Bilharz, and plaintiff has thus failed to create a genuine dispute of any material fact suggesting Bilharz did not have probable cause for arrest.

Here, plaintiff cannot overcome Bilharz's affirmative defense of qualified immunity because the Court finds that Bilharz did not violate plaintiff's Fourth Amendment rights. Even if the record reflected a Fourth Amendment violation—and it does not—Bilharz did not violate a clearly established right, and thus Bilharz is entitled to qualified immunity. Defendants' motion for summary judgment on plaintiff's claim against Bilharz is thus **granted**.

***B. Beck***

Defendants argue that Beck had no personal involvement and is qualifiedly immune. (Doc. 14-1, at 17). Defendants argue it is undisputed that Beck did not detain or arrest plaintiff, and that her participation in the drug recognition evaluation was

insufficient to tie her to the detention and arrest of plaintiff. (*Id.*, at 17–18). Plaintiff argues that Beck had substantive involvement in the investigation of plaintiff by completing her own report and reaching her own conclusion as to whether plaintiff was under the influence. (17-1, at 6).

The Court agrees with defendants that Beck did not detain or arrest plaintiff, and therefore could not have violated plaintiff's Fourth Amendment rights. Plaintiff's claim is based on alleged violations of plaintiff's right to be free from unreasonable seizures. (Doc. 6, at 8–9). Beck did not personally participate in plaintiff's seizure, and therefore cannot be liable for plaintiff's Section 1983 claim. As plaintiff states, Beck's involvement included "complet[ing] her own report and reach[ing] her own conclusion as to whether [plaintiff] was under the influence." (Doc. 17-1, at 6). Beck also "conversed with [plaintiff]" and "conferred with Bilharz and shared her observations and opinions." (*Id.*, at 7). This alone does not support a conclusion that Beck participated in plaintiff's seizure, nor does it demonstrate violation of any clearly established right. Furthermore, even if Beck had been involved in the arrest—which she was not—the Court has already held above that the arrest was not a violation of a clearly established right.

The Court therefore finds that Beck did not violate plaintiff's Fourth Amendment right and is entitled to qualified immunity. Defendants' motion for summary judgment on plaintiff's claim against Beck is thus **granted**.

## *IV. CONCLUSION*

For the reasons stated above, the Court **grants** defendants' motion for summary judgment. (Doc. 14). The Clerk of Court is directed to enter judgment in favor of defendants and may close this case.

**IT IS SO ORDERED** this 7th day of October, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa